IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MELVIN A. MORRISS III, | ) | 8:13CV24 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on cross-motions for summary judgment.[1]  For purposes of deciding these motions, there are no genuine issues of material fact.

On May 3, 2011, the plaintiff, Melvin A. Morriss III ("Morriss"), received a conditional offer of employment from the defendant, BNSF Railway Company ("BNSF"), to work as a machinist.  The job offer was withdrawn on May 18, 2011, when Dr. Sharon Clark, a BNSF medical review officer, determined in accordance with company policy that Morriss was "Not currently qualified for the safety sensitive Machinist position due to significant health and safety risks associated with Class 3 obesity (Body Mass Index of 40 or greater)." (Morriss depo. Ex. 11 (filing 101-2 at 132) (emphasis in original).) [2]

---

[1] The defendant has also filed (1) a motion to restrict access to certain documents, in order to prevent disclosure of the plaintiff's confidential medical records, and (2) a motion to strike the plaintiff's reply brief or, alternatively, for leave to file a surreply brief.  The first motion (filing 95) will be granted. The second motion (filing 118) will be denied.

[2] Morriss stands 5 feet 10 inches tall. On May 11, 2011, he weighed 281 pounds and had a body mass index ("BMI") of 40.3. (Clark depo. Ex. 31 (filing 98-21).) On May 16, 2011, he weighed 285 pounds and had a BMI of 40.9. (Clark depo. Ex. 32 (filing 98-22).)

Morriss claims he was not hired by BNSF because of a disability, or a perceived disability, in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), Pub.L. No. 110-325, 122 Stat. 3553, and in violation of the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. §§ 48-1101 et. seq.[3] Because disability discrimination claims under the NFEPA are analyzed using the same framework as claims brought under the ADA, see Orr v. Wal-Mart Stores, Inc., 297 F.3d 720, 723 (8th Cir. 2002), no separate analysis of the state law claim is necessary.

"To establish discrimination under the ADA, an employee must show that [he or] she (1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment action because of [his or] her disability." Hill v. Walker, 737 F.3d 1209, 1216 (8th Cir. 2013). "The definition of disability in [the ADA] shall be construed in favor of broad coverage ... to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). "The ADA defines a disability as a physical or mental impairment that substantially limits one or more of the major life activities of an individual,[4] a record of such impairment, or being regarded as having

_____

[3] Morriss alleges that he was not hired by BNSF because "he is an individual with a disability as defined by the NFEPA and the ADA" (Plaintiff's complaint, combined counts III & IV (filing 1), ¶ 26), but he has not moved for summary judgment on this claim of "actual disability" discrimination. His motion is limited to claiming it was BNSF's "perception that [he] was disabled" by obesity (Plaintiff's complaint, combined Counts I & II (filing 1), ¶ 19.) BNSF, on the other hand, has moved for summary judgment on all claims and argues that Morriss's obesity was not an impairment, nor was it regarded as an impairment.

[4] "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "[A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder,

such an impairment." *Norman v. Union Pacific R.R. Co.*, 606 F.3d 455, 459 (8th Cir. 2010); *see also* 42 U.S.C. § 12102(1). "[T]hough the ADAAA makes it *easier* to prove a disability, it does not *absolve* a party from proving one." *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013) (second and third alterations in original). Under the ADA as amended,

> An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

42 U.S.C. § 12102(3)(A).

*Tramp v. Associated Underwriters, Inc.*, 768 F.3d 793, 804-05 (8th Cir. 2014).

A physical "impairment" is defined in regulations promulgated by the Equal Employment Opportunity Commission (EEOC) as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1).[5] Consistent with this definition, it has been held "that to constitute an

---

neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2)(B).

[5] Because the EEOC has been granted "the authority to issue regulations implementing the definition of disability in section 12102," 42 U.S.C. § 12205a, this definition must be given a high degree of deference. *Cf. Fenney v. Dakota, Minnesota & Eastern R. Co.*, 327 F.3d 707, 713-14 & n. 10 (8th Cir. 2003) (noting that amount of deference given to EEOC regulations was an "open question" prior to passage of the ADAAA).

-3-

ADA impairment, a person's obesity, even morbid obesity, must be the result of a physiological condition." *E.E.O.C. v. Watkins Motor Lines, Inc.*, 463 F.3d 436, 443 (6th Cir. 2006) (truck driver's weight of 405 pounds was not an impairment under ADA since he was not aware of any physiological cause for his condition); *see also Francis v. City of Meriden*, 129 F.3d 281, 286 (2d Cir. 1997) (physical characteristics that are not the result of a physiological disorder are not considered impairments for the purposes of determining either actual or perceived disability; generally, weight is not such an impairment).

"It is important to distinguish between conditions that are impairments and physical, psychological, environmental, cultural, and economic characteristics that are not impairments." 29 C.F.R. Pt 1630, App. (EEOC Interpretive Guidance on Title I of the Americans with Disabilities Act).[6] "The definition of the term 'impairment' does not include physical characteristics such as eye color, hair color, left-handedness, or height, *weight*, or muscle tone that are within 'normal' range and are not the result of a physiological disorder." *Id.* (emphasis supplied).[7] "The definition, likewise, does not include characteristic predisposition to illness or disease." *Id.*

When he was asked during discovery to provide factual support for his alleged disability, Morriss indicated he had no impairments that limited his ability to perform the functional duties of the machinist position, he required no accommodations to

---

[6] "[T]he agency's policy statements, embodied in its compliance manual and internal directives, ... reflect a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Federal Exp. Corp. v. Holowecki*, 552 U.S. 389, 399 (2008).

[7] One federal district court has read this language to mean that "the requirement for a physiological cause is only required when a charging party's weight is within the normal range." *E.E.O.C. v. Resources for Human Development, Inc.*, 827 F.Supp.2d 688, 694 (E.D.La. 2011). A more sensible interpretation is that a person's weight can be an impairment when it is both (1) outside "normal" range and (2) the result of a physiological disorder.

-4-

perform the job duties safely, and he had no medical reports describing a disability. (Plaintiff's answers to interrogatories (filing 98-3) at 8.) Morriss further stated he "has never had any work restrictions, and did not have any at the time of his application for employment with Defendant." (*Id.* at 10.) Morriss testified he did not think he had a physical disability and was not aware of any underlying medical condition that contributed to his obesity or made it difficult for him to lose weight. (Morriss depo. (filing 98-2) at 18-19.) He stated his weight "has no physical limitations on me." (*Id.* at 19.) His personal physician likewise testified that Morriss did not suffer from any medical condition associated with obesity, such as diabetes, hypertension, cardiac disease, or sleep apnea, that Morriss had no limitations placed on his activities, and that Morriss was fully capable of performing the work required by the machinist position. (Plaintiff's supporting brief (filing 100) at 3-4.) In answering a medical questionnaire in connection with his employment application on May 5, 2011, Morriss described his health as "good" and indicated he had no difficulties or limitations in his daily activities. (Filing 98-20 at 7-8.) Morriss admits BNSF had no information to the contrary.  (Plaintiff's supporting brief (filing 100) at 8-11.)

There is no evidence that Morriss's obesity was caused by a physiological disorder, nor is there any evidence that his weight affected one or more body systems. In short, there is no evidence that Morriss had a physical impairment.[8]  Consequently, his claim of discrimination based on actual disability necessarily fails.

There also is no evidence to support Morriss's claim that BNSF regarded him as having an impairment. It is undisputed that Morriss "was denied employment ... not because of any then current health risk identified by BNSF ... , but because BNSF believed by having a BMI of 40, [Morriss] would or could develop such health risks in the future." (Plaintiff's supporting brief (filing 100) at 11.) As stated above, the definition of impairment "does not include characteristic predisposition to illness or

---

[8] In addition, there is no evidence that the alleged impairment substantially limited one or more major life activities.

disease." 29 C.F.R. Pt 1630, App. (EEOC Interpretive Guidance on Title I of the Americans with Disabilities Act).

Accordingly,

IT IS ORDERED:

1.    Defendant's motion to restrict access to documents (filing 95) is granted, and, pursuant to NEGenR 1.3(a)(1)(B)(ii), access to filings 97 and 98 shall be restricted to attorneys of record and court users.

2.    Defendant's motion to strike reply brief (filing 118) is denied.

3.    Defendant's motion for summary judgment (filing 96) is granted, and Plaintiff's action is dismissed with prejudice.

4.    Plaintiff's motion for partial summary judgment (filing 99) is denied.

5.    Judgment shall be entered by separate document.

DATED this 20th day of November, 2014.

BY THE COURT:

s/ Richard G. Kopf
Senior United States District Judge

---

        * This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.